Good morning and welcome to the Ninth Circuit. Also, Judge Kristin and I want to welcome our colleague, Judge Harpole, from the Western District of Missouri, sitting by designation, so we welcome him. The first case on the calendar today is Belgau v. Inslee, and you may proceed. Good morning. Good morning. Can you hear me well? Yes. May it please the Court, my name is James Abernathy and I represent... Excuse me. Apologies, technical difficulty here. No problem, we can hear you fine. Okay. May it please the Court, my name is James Abernathy and I represent the employees in this case. In Janus v. Aspen Council 31, the U.S. Supreme Court held that agreeing to pay an agency fee or any other payment to a union is an act waiving First Amendment rights that cannot be presumed. Here, the State has deducted union payments from my client's wages, but has not been able to establish that my clients waive their First Amendment rights. The deductions have therefore been unlawful. The District Court erred in two ways when it ruled against my clients. First, as to the union, the District Court erred when it held that Aspen was not a state actor alongside the State in the deduction of money from my client's wages. Second, as to the State, the District Court erred when it held that Janus does not apply at all to my clients. Therefore, the District Court never reached the question of whether on this record there is clear and compelling evidence of a First Amendment waiver, that my clients waive their First Amendment rights. This Court should reverse the District Court on the question of State action and remand this case for determination of whether there is clear and compelling evidence in the record of a First Amendment waiver, or this Court can determine that fact on their own from the stipulated facts. As to the first error, Your Honors, the District Court erred when it concluded there was no State action as to Aspen. The State action here is identical to the State action in Janus, and that is the State deduction of money from employee wages pursuant to a statute implemented in Janus. Respondents try to distinguish Janus' facts from the facts here in three primary ways. One, by observing that there are agreements in this case. Two, by observing that my clients were union members for a time. And three, by starting to align cases that refer to dues deductions as ministerial acts. But none of these three methods of distinguishing Janus from this case are persuasive. First, the presence of agreements here, even if they can be called private agreements, of course we argue they are not, we argue the State is a party to the agreement, but even if they are... Let's just stop there because that seems to be a critical question you say, even if. How is the State a party to the agreement when in fact there is a Washington statute that states it is a collective bargaining agreement? How is the State an actor or a party? How is the State an actor here? Well, you said more precisely that they were a party to the agreement. I think that's what you said. Well, one argument we make is that they are a party to the agreement. And we cite Atlanta Publishing Services for that as a Fifth Amendment case, I believe. But we also argue that even if they're not a party, if it's just an agreement between two private parties, there is still State action in the State's seizure of property. Because the existence of these private agreements does not change the analysis. Just like the existence of similar agreements did not change the analysis in cases like Lugar, Obermeyer, and Fuentes, and even in the wage garnishment cases. What we see in those cases is that disputes commonly arise based on debts that are alleged by one party to have been established in a private agreement. But that does not obviate the State action inherent in the State actually seizing someone's property pursuant to the direction of one of the parties to the alleged private agreement. What about the Duffield case, which basically says that there's no State action if you're simply enforcing the agreement? Which is, the State really acts as a pass-through here. So how do you distinguish the Duffield case? Your Honor, with respect to how the State is acting here, the right that AFSCME is claiming, the right to require the State to seize the money of public employees, is not a right that it could acquire in a simple private agreement between itself and a public employee. The authority for the State to make those deductions originates in statute, and then it had to be implemented in the CBA by both the union and the State. So we're not dealing with the simple court enforcement of a contract here. We have State action long before we even get to a court here, just like we had in Lugar, where we had the State seizing property based upon the ex-party application of one of the parties to the alleged agreement. And I think with respect to the simple enforcement of private contracts, I think, one, when courts act to enforce contracts, they still have to abide by the Constitution. So for example, they couldn't just enforce the ex-party applications of people of a certain race or a certain political party. So in that sense, even when courts act, they have to follow the Constitution. But even so here, this is a right that AFSCME is claiming that was created in a statute, not in a private agreement. I think that's what distinguishes this case from the other cases where you have simple court enforcement. I think our case is more like Lugar, Overmyer, and Fuentes, when you have the State seizing property pursuant to an alleged private agreement that allegedly established a debt. And the State acts on that to seize the property. And the person requesting the assistance of the public officials is also a State actor in those cases as well. But didn't the Supreme Court indicate that it was leaning, not deciding, but leaning in the opposite direction in footnote 24 of Janus? If you would, would you mind me, footnote 24 says? 24. It just makes plain that they hadn't decided the State action question, that they had reserved it, but certainly expressed hesitation. If you're not familiar with it, it wasn't a trick question. I just wondered if you wanted to comment on it. Well, as far as the State action question goes, on remand at the Seventh Circuit, I'm familiar with the Seventh Circuit. I'm familiar with the Seventh Circuit's case. I was just wondering if you wanted to comment on the Supreme Court's footnote. But it's fine. I don't want to interrupt your argument. It's fine. Well, I think there has to be State action for the court to reach the decision it did in Janus. Because if the deductions are not State action, then I don't think the court even reaches the question of compulsion or the constitutionality of the issue. Well, it wouldn't have to. You're treating it as a threshold jurisdictional issue, though. Correct. Because the respondents here are arguing there is no State action. I understand. Okay. The other way that the respondents try to distinguish Janus from this case, both on State action and on the constitutionality issue, is by observing that my clients were members at one time here. But I think ascribing legal significance to the non-member-member dichotomy here creates a host of problems. First and foremost, it completely ignores the fact that my clients were non-members when they were hired, as are virtually all public employees when they're hired. Second, I think it requires an illogical two-tier interpretation of Janus, in which a high waiver standard is applied to non-members and a low contract standard is applied to members. Although, I'm not sure what the lower standard would be because Janus doesn't discuss the contract standard. I think the other problem is it ignores the actual text of Janus' holding. And it renders the waiver language a complete dead letter. Because post-Janus, what could a non-member be agreeing to pay to a union other than membership dues? Since agency fees are now illegal and representation fees are now illegal, there's no such payment other than membership fees. So if Janus' waiver language doesn't apply to the membership, what the union calls membership dues, I don't think it applies anywhere. I think it also ignores the broad language in Janus' holding, which refers to any payment to a union. It refers to any attempt to collect a payment going to a union. And then it refers to any money going to a union. And I think that's very broad language that references other types of payments other than agency fees. Because it specifically mentions agency fees and any other payment. It also mentions employees in general twice. And I think, also importantly, if Janus does not apply, the Janus' waiver standard does not apply simply because a union puts a membership provision into a dues authorization agreement, I think that completely swallows the First Amendment whole here. Are you suggesting there cannot be a valid waiver? On the facts in this case? Yes. On the facts in this case, that's one of my arguments, that they have not been able to waive their First Amendment rights before Janus acknowledged them. Can I just clarify that, counsel? Because I have the same question as I read and read your briefs. Is the idea, is your argument, that they weren't waivable because pre-Janus they didn't know they had the right? Correct. Is it possible to have a knowing waiver before Janus? And I think this is especially true given the compulsory fees that were imposed at the time. So even if they were told, and they weren't, but even if they were told that they had a right to pay no money to a union, they didn't in fact have that right. But your clients were told that they had the right to pay just representation fees and didn't take that option, is that right? Correct. They did not decline membership at that time. They opted in and paid full fare. Correct, at that time. They decided to become union members, given the circumstances yet. And they did not have, they didn't know what their rights were at the time. I think if we, when the district court, excuse me, connects, says Janus doesn't apply because my clients were members, we're putting the fate of the First Amendment in the hands of a unilateral internal union membership decision. And so whether any contractual obligations or arrangements solely between the union and the employee arose as a result of this agreement, does not impact the status of the state deduction as state action. There's still state action in the deductions and they still need to be preceded by a waiver. I wanted to just, I wanted to just let you know that you have about three minutes left and I didn't know if you wanted to save some time for rebuttal. I would like to save some time for rebuttal. I mean, you're welcome to keep going, but I wanted to just alert you. Thank you very much. I'll reserve my remainder of my time for rebuttal. All right. Thank you. Thank you. Thanks. Good morning. Matthew Murray for the Washington Federation of State Employees. I'll take 10 minutes. Counsel for the state will take five. Under Washington law, union membership is voluntary. The state only deducts union membership dues from an employee if the individual employee affirmatively authorizes those dues. The First Amendment prohibits government compulsion, but there is no government compulsion here. The state simply implements the employee's own voluntary private choices. What about the argument that the union employees could not have waived their rights pre-Janus because they didn't realize the full extent of the rights that they had? Plaintiff's argument would require that millions of union membership agreements signed before Janus were all invalid. The Supreme Court made clear in Janus that it was not requiring that kind of revolution in state labor relations law. In footnote 27, the court said, except for agency fees, states can keep their labor relations exactly as they are. All contracts are signed based on the currently existing law, and it's well established that a change, a later change in the law affecting an alternative to the contract that the parties did not decide to agree to. What's your strongest authority? For that particular point? Yes. The Supreme Court in the Brady case held that a plea agreement, even when the heightened, special, knowing, intelligent... You're going there to criminal land. Mm-hmm. Do you have another authority that would be more applicable to what we have here? In the Koltek case, the court in that case rejected the argument in a civil context that a party could renege on its contractual agreement, on its agreement, based on a subsequent Supreme Court case that changed the alternatives relative to that party. And I think that it's important to recognize that the plaintiff's argument here is that when the Supreme Court in Janus said, by agreeing to pay, nonmembers are waiving their First Amendment rights and such a waiver cannot be presumed, the plaintiffs are focusing on that word, waiver, and saying that by using that word, the Supreme Court intended to import into this context the special, heightened waiver standards that apply to protections in the fair criminal trial context, the knowing, intelligent, voluntary waiver standard. The court, the Supreme Court, in the Schneckloth v. Bustamante case rejected that kind of reasoning. The court there said that waiver is a vague word and it has many different meanings in the law, good or bad, and the context matters. So in Schneckloth, the court held that an individual could waive, validly waive their Fourth Amendment right against unreasonable searches and seizures by voluntarily consenting, that the knowing and intelligent waiver standard does not apply in that context, and an individual can agree to a search without being warned in advance that they have a right to say no, without knowing that they have a right to say no. In Janus itself, the Supreme Court did not say that the knowing, intelligent waiver standard applies. The court in Janus said, in the context of fees for nonmembers, which is not the factual situation we're addressing here, the employee must affirmatively consent. The court cited some waiver-by-silence cases in which the courts had rejected the argument that an individual had waived a constitutional right by doing nothing, by remaining silent, and the court said that in this context, the state cannot impose, as a condition of employment, the requirement that an employee pay, a nonmember employee pay a fee to a union, and the state also cannot presume, by that employee's silence, that they wish to support a union and require them to opt out of such a payment. What about that period after they decide they want to give up the ship and then they're kind of held hostage till the end of that one-year period? Are they not in a compelled situation there? The source of the obligation to pay dues was the plaintiff's own private, voluntary agreements with the unions. Agreements to pay money to a private organization or entity for a set period of time in exchange for consideration are enforced all the time under the law. We said as much in FISC. You did. What about... Are you familiar with the... I would like to switch to state action if I could and get your... or unless you're trying to divide that up differently. I just appreciate hearing your position on state action and whether we should reach it. You don't have to reach the state action issue in this case. We... Right, I know that, but what's your position, please? There's no state... The terms of plaintiffs' volunteer agreements with their unions are not state action. How do we distinguish what's the Seventh Circuit's decision on remand in Janus? In Janus, in the Supreme Court, in the Seventh Circuit, in the fair share fee cases in general, the state action was the state requirement, the state-compelled fee, the state requirement that nonmembers pay the fee. The state was the source of that obligation. The source of the obligation here is not the state. The state just says, we will honor whatever the private employees decide. The source of their obligation to pay the fees was the employee's own voluntary affirmative agreement with the unions. This... Courts enforce voluntary agreements all the time that touch upon First Amendment rights. But isn't... In some ways, isn't state action a threshold issue? Because if you... take the argument, um... in... the way that Mr. Abernathy suggests, the voluntary agreement is being implemented, enforced by the state. So... if you... take... take that construct, don't you have to figure out if this... if what the state is doing is state action? Because it... it kind of begs the question to say, well, it's private. He said, yeah, it's a private agreement, but... you have the state action. There... there are two ways you could... two angles you could look at this case from. You could say, is what the state doing violate the First Amendment? The answer is no. The state is simply honoring the private choices of their... its employees. The Supreme Court in Cohen v. Cowell's Media said the First Amendment doesn't give... isn't violated when the state, in that case, by enforcing a promissory estoppel law, when the state enforces private agreements. That doesn't violate the First Amendment. That is enough to affirm the district court below. The other way to look at it, the other angle, which would be similar to the way the court in the Roberts case, the Duffield case, looked at it in the context of an arbitration agreement, is that, what is the source of the obligation here? The obligation at issue was the plaintiff's obligation to pay the money, and the source of that obligation was their own private agreement, the state's ministerial implementation of that agreement. And that would distinguish it from the Seventh Circuit situation. Correct, because in Janus, the source of the obligation was the state itself. Um, the... Here they opted in. That's what you're, you're relying on here to distinguish. They, they opted in. They, they agreed. The state did not tell them, you have to pay money, you have to pay union dues, you have to join the union. The state said, we'll do whatever you want, and the plaintiffs said, I want to join the union, and I want to pay dues for a one-year period. And the state said, okay, that doesn't violate the First Amendment. Um, under this court's cases in Roberts, an oh-no would be a way to analyze the state action principle. The Supreme Court's argument, uh, case Cohen, would be a way to look at it from the lens of, what is the state doing, and does that violate the First Amendment? Um, it, it does not. Adopting the plaintiff's position would require a revolution in both state action and basic contract principles. Courts would have to reconsider the enforcement of arbitration agreements, non-disclosure agreements. Um... Well, if, if legally he's correct, are we supposed to make our decision because it might turn into a contract revolution? I mean, is that really... we're supposed to infuse public policy into our decision, or are we supposed to look at what the law says? You look at what the law says, and the, I, the examples I give are just examples of why what he's saying is not legally correct. Um... I think it's a, a, a, another important point to consider in this situation is that the First Amendment rights at issue, the right, uh, to not support a union, the flip side of that is a First Amendment right to support a union, and the plaintiffs here exercised that right. They chose to join a union and to support that, uh, union, and to impose a special heightened standard on those type of agreements between private parties in the context of a union, a standard that doesn't apply in the context of any agreement to join any other voluntary association. So are you arguing that had they had different plaintiffs, had they had, had they had plaintiffs that were situated as in Janus who had not opted in, that there would be state action here under a Washington scheme? Had they had plaintiffs that had not opted in and were required to pay fair share fees before Janus, um, by the state, that would have been state action. Had they had plaintiffs who, um... And counsel, that's what I'm asking. Yes. Under this scheme, was that the scenario? Before Janus, there were, um... Janus required a statutory change here. There was a statutory change here after Janus that's undisputed that the, the state and the unions stopped collecting fair share fees immediately after Janus. I see my time is up, and I don't... So you didn't answer the question. And the question is, then, please, if they'd had different plaintiffs, if they'd had plaintiffs similarly situated to those in Janus who had not opted into the union, is your answer that under Washington scheme, as it existed at that time, there would have been state action? Yes. Thank you. I appreciate that. Thank you. May it please the Court, Alicia Young, Deputy Solicitor General, and I'm here on behalf of the state appellees. The state complies with the First Amendment by making union dues deductions only after its employees voluntarily and affirmatively authorize them. Plaintiffs' real challenge here is to the validity of their private agreements with the, uh, union, which is not state action and which the state is not a party to. The state's policy to follow the dues deduction instructions contained in those agreements is exactly what the First Amendment requires, and summary judgment should be affirmed. As counsel alluded to, the dual nature of the First Amendment rights is very important in cases like this because the state has to balance both the right to associate with the union and the right to decline to associate, and state laws have, uh, struck a very careful balance to protect both sides of that right. Here, state law precludes the state from interfering with the relationship between unions and their members and involving itself in the, in the development of union membership agreements, but the law also requires the state to, um, comply with employees' expressed wishes and directions to make the union dues deductions, and that's what happens here. Here, the plaintiffs expressly, voluntarily, and affirmatively authorized the union dues deductions and so there is no First Amendment problem. Um, as, as my co-counsel alluded to, the First Amendment only, um, precludes state compulsion. It does not preclude the state from making deductions that its employees authorize. And the kind of arguments that are being made here, um, by, uh, the plaintiffs would call into question the state's ability to make, um, charitable deductions that are authorized by its employees. Under the plaintiffs' theory, the state would be required to investigate whether the charity engages in expressive activity and then explicitly inform the employees that the charity does engage in expressive activity, perhaps how much, in what way, and then, uh, according to the plaintiffs, would have to essentially get the kind of knowing voluntary and intelligent waiver that a criminal defendant has to give before they would give up their right to a fair trial. What about that, that kind of, um, no man's land after you revoke but you can't really get out? Um, that is a limited time period and it's essentially when the employee joins the union and avails themselves of union membership benefits, they've agreed to essentially a one-year commitment or a financial commitment. It's no different than if the employee had paid the annual membership dues on day one of signing up for the member for the union or had agreed to do it over a 12-month installment, which is essentially what happened here. Open enrollment period, right? Yeah, it is, but the difference, of course, is if you don't want to pay the money, you ought to be able to get out. What if the contract were deemed not to be enforceable as a private contract because of waiver or because of not knowingly entering the contract? What would that do to this orphan period? If the contract were not a valid contract, then there would not be valid consent. Correct. And if there's not valid consent, the state cannot make the deductions. Alright, so if you get past the first hurdle that the state is home free, if you can't get past it, then we'd have a First Amendment problem. Most likely. I would obviously have to think about the facts and circumstances of any particular case, but yes, I think that would raise questions about the state's ability to make the deductions at all. The state's practice is entirely consistent with JANUS to the extent it applies. Counsel, you just have just about a minute left. Not at all. I have a question. Your position please on state action, whether we should reach it. I think, I realize FISC was unpublished, but I believe in that case parties asked us to not reach state action, specifically if memory serves, because this case was percolating up. What's your position on whether we should reach that question? It is a threshold question. The court obviously does not need to, but we think the court should decide this case based on the fact that the source of the harm that plaintiffs are complaining about is not state action. You would have us affirm the district court's ruling and rationale to use a shorthand? Yes. That would then leave the individual plaintiffs with a claim against the union, correct? If they thought they shouldn't have paid at all. In this case, the only claim left would be an unjust enrichment claim against the union, correct? I think as the court well understands, Janice, the state action was a law that required the payment as a condition of employment. That's not what we have here. I ask the judge           employment as a condition of employment. I ask the judge to confirm that the state action was a law that required the state action as a condition of employment. I ask the judge to confirm that the state action was a law that required employment as a condition of employment. I ask the judge to confirm      law that required the state action as a condition of employment. I ask the judge to confirm that the state action of the state deductions transformed union membership decisions on membership policy and the state action. My clients aren't challenging membership policy decisions. My clients are challenging the state deductions themselves. Your Honor, as far as whether millions or thousands of union membership agreements are invalid, that's not an issue before this court because whether any contractual obligations arose solely between the union and the employee in this case is not before this court because it doesn't impact the status of the deduction. So if the union can establish a membership relationship between the employee can establish some sort of requirement to pay in exchange for benefits that can be a contract claim that they bring. I think this is where the district court got confused on pages 15 and 16 of the decision. The district court said that there was no joint action here because the source of the deprivation or the source of the union's right to collect dues pursuant in exchange for fees in exchange for membership dues comes from the agreement. But one, that's not true because there's no language in the agreement that allows the union to collect any money from my clients. And second, it doesn't matter because it's not the union making the collections, it's the state making the collections. Let me ask you a question. I'm confused. Are you saying that any time the state honors an employee's request to take a deduction from a company, whether or not they're engaged in certain activities? The actual deductions would be state action. The contractual agreement on the side that don't have to do with the deductions would not be. That's why insurance companies would not be on the hook for state action for coverage questions. Why not? Because similar to these ministerial act cases, the question of insurance coverage would be something that's solely between the company and the employee, just like in these ministerial act cases. And why isn't this just between the union and their member? Because we're dealing with state deductions here. They deduct money for health insurance and for charitable contributions and for retirement contributions. Correct. And those deductions themselves would be state action. And so if someone challenged the authorization, say they said to the state, you don't have authorization to get these deductions, which is what my clients are arguing here, that would be state action. But if there's a dispute based upon agreements solely between the third party and the employee, that would not be state action. Would it be state action? I mean, there's a lot of disputes and health plans over abortion and other services and routinely employees have their health plan deducted by the state. Does that mean the state,  to make the pass-through deduction, has state action? With respect to the, for example, the policy, the abortion policy, and the state. Right. Well, no, not with respect to those issues. With respect to the deduction itself, it wouldn't be state action. But no one challenged, in those cases, no one was challenging the deductions themselves. No one was saying that the deductions themselves were part of it. But we did have a case which was cited. The court in that case said, in footnote 14, I believe, the court said that the deductions were state action. But the unilateral union decisions on, for example, what the dues rates were, what the, whether the union members could be, work for another fire department, that was investment, those were not state action. Alright, I just wanted to let you know you've well exceeded your time. So, thank you very much. We appreciate the additional remarks. I want to thank all counsel both for the argument and the briefing this morning. The case of Belgau versus Inslee is  Thank you.
judges: McKeown, Christen, Harpool